IN THE MATTER OF: JAMES LYMAN DEFORD, A MINOR.

(Filed 20 March, 1946.)

**1. Parent and Child § 4—**

A decree directing that a minor child remain in the custody of its paternal aunt as the agent of its father in effect awards the custody to the father subject to the provision that the child be cared for in the home of its aunt, and upon proper findings such decree, entered in a contest for the custody between the father and mother, is in accord with the decisions of this State.

**2. Courts § 2—**

The final judgment or decree is the end for which jurisdiction is exercised, and courts will seek to maintain control over their judgments and processes in order to make them efficacious.

**3. Same—**

Courts have no extraterritorial jurisdiction and will not adjudicate when they cannot enforce the adjudication, and therefore a court will not enter a decree the very terms of which will divest it of jurisdiction or vest the losing litigant with power to defeat the jurisdiction.

**4. Parent and Child § 4—Portion of decree permitting child whose custody is at issue to be taken from State held erroneous.**

Decree was entered in the lower court awarding the custody of the child to its father, with provision that its mother might take the child to her domicile in another state each year during vacation time and that the father or his agent might go and get the child at his own expense just prior to the beginning of each school year and return it to the domicile provided by him in this State. · *Held:* The portion of the judgment permitting the mother to take the child out of this jurisdiction must be stricken, and in lieu thereof the lower court, in its discretion, may make provision for the mother to visit the child within this jurisdiction.

**5. Same—**

The rule that the removal from the State of a child whose custody is at issue will not be permitted is not an absolute or arbitrary principle and may be departed from when it is clearly manifested that the welfare of the child requires it.

APPEAL by respondents Nettie DeFord, Cynthia DeFord Adams, and Sgt. Lyman DeFord, from *Carr, J.,* September, 1945. From JOHNSTON.

Proceeding instituted in the juvenile court of Johnston County to determine the custody of James Lyman DeFord, an infant seven years of age.

Petitioner, Mrs. Elizabeth Brown Mann, and respondent Lyman DeFord, a native of North Carolina, married 25 January, 1935, in Louisiana, of which State petitioner was then a resident. DeFord was then and is now a sergeant in the United States Army. On 1 July, 1938, James Lyman DeFord, their only child, was born.

In September, 1943, Sgt. DeFord, due to information received, went to Shreveport, La., where petitioner was then living. He found that his wife was then in jail and his child was in the custody of the juvenile court. The juvenile court awarded him temporary custody of his child, and he immediately placed it with his sister in Four Oaks, N. C., for proper care and attention, and made an allotment for its support. He likewise instituted, in Louisiana, an action for divorce in which he prayed custody of the child.

A final decree of divorce was entered 27 September, 1943. The judgment awarded custody of the infant child to its father, Lyman DeFord.

Since the divorce, petitioner has married twice and has lived in various places. She now lives with her present husband and his four children in a three-room apartment in Nederland, Texas.

On 10 August, 1945, petitioner came to North Carolina and instituted this proceeding in the juvenile court of Johnston County to obtain custody of said infant. Respondents were duly notified and the matter came on for hearing 20 August, 1945, at which time, after consideration of the evidence, oral and documentary, the juvenile judge found the facts and adjudged that the right of custody of the child should remain in the father in the home of his sister, Cynthia DeFord Adams, with the right in petitioner to visit it within this jurisdiction. Petitioner appealed.

When the cause came on for hearing in the court below it was heard by consent on the record and transcript of evidence sent up by the juvenile court. The court found certain facts, concluded that petitioner has failed to show that she "will establish a home of such permanency as to justify the Court in finding that it would be to the best interests of her child at the present time to award the custody of the child to her," and ordered "that the said child remain in the custody of Mrs. Cynthia DeFord Adams, as agent of his father, Sgt. Lyman DeFord, until ten days after the close of the school year 1945-46, at which time the mother of the child will be permitted to take the child to her home wherever she may be living and keep him in her custody during the vacation time, and until ten days before the beginning of the school year 1946-1947 in Four Oaks, North Carolina, and at that time the father of the child, or Mrs. Cynthia DeFord Adams, will be permitted to go to the home of the mother wherever she may reside at that time, and at their expense bring the child back to Four Oaks, North Carolina, and keep him during the school year 1946-1947, and it is ordered that this interchange of custody of the child, that is, that the child shall remain with Mrs. Adams as the agent of his father during the school time and with his mother during the vacation period, shall continue in effect until further orders of this Court.

"IT IS FURTHER ORDERED that the mother shall bear the expense of taking the child to her home during the vacation period and the father shall bear the expense of getting the child and returning him to the home of Mrs. Adams, as provided for in this order."

Respondents excepted and appealed.

*C. G. Grady and Hooks & Mitchiner for respondent, appellants.*
*Lyon & Lyon for petitioner, appellee.*

BARNHILL, J. When the court below directed that the infant, James Lyman DeFord, remain in the custody of Mrs. Cynthia DeFord Adams, its paternal aunt, as the agent of its father, the respondent Lyman DeFord, it in effect awarded custody to the father, subject to the pro-

vision that the child must be cared for in the home of Mrs. Adams. This part of the order entered is in accord with the decisions of this Court. *Newsome v. Bunch,* 144 N. C., 15; *In re Jones,* 153 N. C., 312, 69 S. E., 217; *Latham v. Ellis,* 116 N. C., 30; *In re Lewis,* 88 N. C., 31; *In re Turner,* 151 N. C., 474, 66 S. E., 431; *In re Fain,* 172 N. C., 790, 90 S. E., 928; *In re TenHoopen,* 202 N. C., 223, 162 S. E., 619; *Palrick v. Bryan,* 202 N. C., 62, 162 S. E., 207.

The court below, however, after awarding custody to the father, imposed a condition which permits the petitioner to take the child to her home in Texas, or wherever else she may then be residing, and to keep him during the summer and imposed upon the father the duty and expense of going for and returning it to North Carolina each year just prior to the fall session of school. It is to this part of the order the appellants except. The exception is well founded and must be sustained.

The final judgment or decree is the end for which jurisdiction is exercised and it is only through the judgment and its execution that the power of the court is made efficacious and its jurisdiction complete. 21 C. J. S., 35 (sec. 21).

"The existence of this power of a court over its judgments and processes is absolutely necessary in order to prevent the abuse of process and the oppression of suitors. . . ." 14 Am. Jur., 374.

Therefore a court will not adjudicate where it cannot enforce the adjudication, or turn its suitors over to another tribunal to obtain justice, or vest the losing litigant with the power to defeat the jurisdiction of the court and thus nullify the relief granted the successful suitor, or enter a decree by the very terms of which it will be divested of jurisdiction and left powerless to compel obedience. *Central National Bank v. Stevens,* 169 U. S., 432, 42 L. Ed., 807; *Knox Co. v. Aspinwall,* 24 How., 376, 16 L. Ed., 735; *Bankers' Trust Co. v. Greims,* 147 Atl., 290 (Conn.), 66 A. L. R., 726; 14 Am. Jur., 379.

Hence, in a proceeding of this nature, in the absence of unusual circumstances, a court should not enter an order which permits the infant to be removed from the State by one to whom unqualified custody has not been awarded. *Harris v. Harris,* 115 N. C., 587; *In re Turner,* 151 N. C., 474, 66 S. E., 431; *Page v. Page,* 166 N. C., 90, 81 S. E., 1060; *Page v. Page,* 167 N. C., 350, 83 S. E., 627; *Walker v. Walker,* 224 N. C., 751.

It is axiomatic that courts have no extraterritorial jurisdiction. 21 C. J. S., 141. It follows that so soon as the petitioner, under the permission granted in the order entered in the court below, takes the child to the State of Texas, the power of the courts of this State to exercise further control over the infant would be ousted. The courts of Texas would acquire jurisdiction and the decree awarding custody to respond-

ents would be rendered wholly ineffectual. *In re Alderman,* 157 N. C., 507, 73 S. E., 126; *Wilson v. Elliott,* 96 Tex., 472.

"It does not appear that the mother . . . is in anywise more suitable than the father. The father is domiciled in this State; the mother is a nonresident. Under these circumstances, unless more shall appear, the custody should remain with the father. The Court certainly would not, upon these facts, award the custody to a person out of the State. To award the custody alternately to the father and the nonresident mother would be to place the child out of the jurisdiction of the Court, so that it would be impossible to enforce so much of the decree as directs the return of the child to the father after the specified time. . . . The Court, under special circumstances, may allow an infant ward to go out of its jurisdiction but it will not abdicate its functions. . . ." *Harris v. Harris, supra.*

The rule that the removal from the State of a child whose custody is at issue will not be permitted is not an absolute or arbitrary principle and may be departed from when it is clearly manifested that the welfare of the child requires it.

The petitioner relies upon *In re Means,* 176 N. C., 307, 97 S. E., 39, which fairly represents a line of decisions to this effect. But nothing there said is out of harmony with our conclusion here. There the matrimonial domicile was in Rhode Island. The father, having separated from his wife, surreptitiously took the child and brought it to North Carolina. The mother instituted a proceeding here to obtain custody. It was found as a fact that she was a fit person to have custody of the infant and could offer it many of the advantages of life in a modern home surrounded by the conveniences and comforts of life, and that the father, a fugitive from justice, was not a suitable custodian. Under these unusual circumstances custody was awarded to the petitioner. In so doing the court fully executed its judgment.

So much of the judgment below as permits the mother to take the infant out of the State must be stricken. In lieu thereof the court, in its discretion, may make provision for the mother to visit her child under conditions similar to those imposed by the judge of the juvenile court.

Modified and affirmed.